in United States Equal Employment Opportunity Commission versus AAM Holding Corp. Case number 241672. Okay. Good afternoon. Mr. Kimmel, that's one of the great irons. Yes, but not the same Kimmel. No relation, I'm guessing. You saw my opening line, your honor. You can't tell me what I lost. May it please the court. Jeff Kimmel, Aikman LLP for the respondents. Your honors, this matter arises out of a EOC charge filed by a single individual alleging what is admittedly on an allegation basis, egregious sexual harassment taking place at the club. The individual making the allegations worked at the clubs, I should say, for a period from October 2019 through August 2021, during which that period the club was closed for an extended period of time due to the pandemic. In response to that charge, and I should note, by the way, that while the charge, the charging party was employed by the club for that period of January 2019. I mean, I apologize, through October 2019 through August 2021. The charge itself specifically in its exhibit five to the appendix and paragraph nine specifically says that this egregious alleged behavior took place during the last few months of the charging party's employment. In response to this single charge of sexual harassment leveled against the club, the EOC issued a subpoena seeking names, age, gender, race, positions, held dates of employment, contact information for all employees of the clubs for a period from January 2019. Nine months before the charging party was even employed by the club through the presence at the time of the subpoena, which was November 2023, which was about two and a half years after the charging party was no longer at the club. Therefore, in response to this single charge, the EOC issued a subpoena asking the the the employer to compile all of this data over a five year period, which was not contained by the clubs in electronic form required the employers to compile this information and put it in electronic form for the EOC in a specific format required by the EOC. It respectfully asserted that the court below abused its discretion in compelling the employers to comply with that subpoena. So you agree that that's the standard of review? Yes, Your Honor. No dispute that it's abuse of discretion. But in fact, the abuse of discretion... I mean, before we get there, aren't you arguing that the EOC doesn't have the authority to issue this subpoena or continue seeking to enforce this subpoena after a complaint was filed by the individual? Yes, Your Honor. That's one of our arguments as well. Is that where you should be first? I'm happy to address that, Your Honor. The law is clear that the EOC does not have plenary authority. The EOC can only bring an investigation based on a charge being filed. As such, the charge is what triggers the right of the EOC to investigate an employer. That right to investigate is delineated in a statutory scheme. The statutory scheme is contained in 42 U.S.C. 2000E5, which states, among other things, that if within 180 days from the filing of such charge... Let's assume that we know what 2000E5 says. Thank you, Your Honor. Well, I mean, that is the argument, essentially, Your Honor, that that statutory scheme allows only a certain number of things to happen after a right to sue letter is issued and an action... Where in the text of 2000E5 does it say that the EOC is divested of authority as a matter of vindicating the public interest to pursue a charge, notwithstanding what happens to the litigation commenced by a private party? Well, Your Honor, the statutory scheme creates time limits on what can happen once a charge is filed and what has to happen to certain time limits. It then gives this particular time limit, and it says that if within 180 days of the filing of the charge, the commission hasn't filed a civil action, and by the way, that's within the period in which it's supposed to be investigating the complaint, that a civil action may be brought by the respondent or if it's a commission charge by a person allegedly aggrieved. Or the EOC has another option of intervening in an action that may be commenced by the complaint or the aggrieved individual. But the best authority for this is what, the Fifth Circuit case from the 90s? 1997 Fifth Circuit case called Hearst. And you've got the Ninth and Seventh that's going to go in the other way on this now, post-Waffle House by the Supreme Court, right? Your Honor, correct that the Ninth and Seventh Circuits have disagreed with the Hearst analysis. The Hearst analysis is based on statutory text. The others are not. But the Waffle House case, can I just address the Waffle House case, Your Honor, for a moment? Go ahead. The Waffle House case, U.S. Supreme Court case, says one thing, right? It says that in a case where there's an arbitration agreement existing between the employer and the employee, that that arbitration agreement does not prevent the EOC from investigating once a charge has been filed or commencing its own action ultimately. That's merely to say that the two parties cannot, by agreement, divest the EOC of its rights. It's the master of its own case. It does not mean that the EOC's scope of their investigation, whether it's the broadness of their investigation or the timing of their investigation, is completely untethered and that they have no restraints. Waffle House doesn't suggest it's completely untethered. There are still certain time limits, but that those are time limits tied to the EOC's investigation and ability to pursue a case. Not time limits tied to or linked to or tethered to the actions of a private agreed person. Is that, am I missing something? No, Your Honor, you're not. However, the, again, they are tethered to their statutory, to the statutes that create the rights of the EOC to investigate and so on. Let me ask you something. I think I understand the argument, although it could also apply not just to the EOC but to the Department of Justice, which has very similar language with respect to time limitations and so on. But what happens if you've got an agreed person who just is in dire straits and the employer, understanding that that agreed person who's gotten a notice to sue, who sues, settles for nominal damages? The agreed person has no idea, but it's a real case. And it's a case beyond just the agreed person. Your argument, I'm going to say something that's maybe sacrilegious. Forget the text for a second. Your argument would prevent the EOC from pursuing its own investigation to vindicate the public interest, which was, by the way, something that Waffle House, the Supreme Court of Waffle House, recognized was a very important integral interest to the whole scheme. So, Your Honor, if that settlement occurred after the charge was filed, but before a right to sue letter was issued by the EOC, that settlement would have no bearing on the EOC's ability to continue their investigation. But they have a limited time to conduct their investigation. And once that right to sue letter is issued, upon that, there are certain things that can happen. The agreed individual. Your argument is not a timing issue. It's consistent with the Fifth Circuit's analysis. If the agreed party's case is completed, is done, the EOC has nothing more that it can do as an enforcement matter. That's the argument. That's the analysis of the Fifth Circuit as I understand it. Am I right or am I wrong on that? You're right to the extent that the EOC, after issuing a right to sue letter, within that 180 days or beyond the 180 days, if they take longer than 180 days, they no longer, the purpose of their investigatory power no longer exists. Once a private suit is initiated, I mean forget settled, initiated, that divests the EOC of its authority. Correct. I think I'm out of time. So why don't we, you did reserve some time, Mr. Cable. You get a lot of time today for rebuttal. We'll hear from your friend on the other side. Thank you and may it please the court. Jim Driscoll McCaffrey on behalf of the EEOC. I'd like to start with the questions where the court left off with regard to Hearst, Union Pacific, and Federal Express. As this court recognized, the text of Title VII requires the EEOC to investigate charges of discrimination. It does not explicitly or implicitly limit the EEOC's ability to continue that investigation based on the actions of a charging party once that charge is filed. And that was the Seventh Circuit's holding in Union Pacific saying there's nothing explicitly or implicitly there. And if you look through the text of the statute, there isn't a limit there. We've never waded into this, right? We've got to decide one way or the other. That's correct, Your Honor. And here, as this court noted, Waffle House came out after Hearst and it joined a long line of Supreme Court cases recognizing that the relationship between the charging parties and the EEOC's investigative enforcement authority was not one where the EEOC's authority was derivative of the charging party's action. We have an independent statutory obligation to investigate claims of discrimination in order to defer the Congress's interest in ending employment discrimination. We pursued that interest here by notifying the parties that we were continuing the investigation once the charging party requested and we sent out the notice of right to sue. That does not affect, under Waffle House and Occidental, the EEOC's ability to continue investigation. Turning to the merits of the subpoena, as counsel for the other side has recognized, the abuse of discretion standard here applies. The Supreme Court recently set out that differential standard in the claim. That requires flashed answers to show an error of law or clear error of fact in the district court's decision. And here they've done neither. I don't understand why is race relevant at all in this? I mean, there's been no allegation of racial discrimination or impropriety, right? That's correct, Your Honor. This is a claim of sexist... Why seek information that includes the race of the employees of flashed answers? Your Honor, that's part of the contextual identifying information that we requested through the request for information and then in the subpoena in order to identify potentially aggrieved individuals and witnesses to the discrimination. And as the Ninth Circuit and McLean and courts around the country have held, the subpoenas can be used to talk to individuals who may cast light one way or another on the allegations of whether discrimination occurred. So, for example, if we talk to a witness who says that there was somebody who saw something happen and they were... What color of race? Having that information allows us to better identify and speak to that potential witness to the discrimination. It's not the same, but it's analogous to the computer database information that the Ninth Circuit discussed in the FedEx decision where it said the information was relevant because it allowed the EEOC to target its investigation. As long as you have the name, date of birth, Social Security number, why would you need more? Your Honor, if we spoke to... Using that information, if we're able to contact a witness who then tells us another person was there who saw this. They were a woman in their late 40s who were Hispanic or white. Having that information allows us, if they don't know that individual's name, to be able to contact that individual and find out if they can cast light one way or the other on whether or not the discrimination occurred. Which helps you to get... It's relevant to get relevant information. That's right, Your Honor. And that's consistent with the broad standard of relevance that applies here. As the Supreme Court recently reaffirmed in McLean, this generous standard of relevance looks to whether it casts light on the allegations of discrimination. And here we're just looking for basic information to identify whether there are these aggrieved individuals or witnesses, whether or not the discrimination occurred. So have the subpoenas now been fully complied with or is there still outstanding information, still outstanding requests? Your Honor, that's not in the record before this court, but I'll represent it and I will defer to counsel across the way as well. But there was a motion for a stay that was denied. Yes, Your Honor, and there has been production and there are status reports being regularly made to the district court. My understanding is there's another status report due next week, but that a large majority of the information has been provided at this time. But again, that's not in the record now. Why are we here? Your Honor, as we argued in the opposition to the motion to stay, compliance with the subpoena doesn't move the subpoena because if this court were to rule for the employer here, we could return the information to them. We don't think there's any evidence here that the district court abused its discretion in such a way that would require that result, but that is why this case is before this court. On relevance, it's important to note here that they have not contested the Shell-McLean standard. They've only argued that this court should import a line of cases from outside the circuit that dealt with, as the district court appropriately recognized here, charges that did not allege discrimination against others. And this charge on its face does allege that other women experienced hat harassment in the workplace. There was neither a legal error then in the legal standard used or in the assessment of the charge. If I may move on to burden. Do they contest, I'm not sure that I know the answer to this, do they contest the nature of the information sought or really the scope? Or is it both? Your Honor, before the district court entered its order enforcing the subpoena, they refused to provide any information in response to the subpoena. No, no, on appeal. The same, Your Honor. So I think they're challenging the subpoena in its entirety. In other words, without the district court order, they would not have produced any identifying information for any employee at either location. And without breaking into either racial or gender or age, just no information, period. That's my understanding, Your Honor. Once this court has assessed relevance, then the burden shifts to the employer to show an undue burden. And under the well-setted standard under McLean and under this court's decisions in American Medical Response and FTC versus Rockefeller, that's a high and difficult burden to meet that requires a serious disruption to the respondents' operations. Here again, there's no error of law or clear error of fact. The district court used that well-settled standard. Flash answers has asked this court to import a new standard that would require the court to assess relevance again in the undue burden analysis. But that is not what McLean set out, and that is not what this court did in American Medical Response or FTC versus Rockefeller. Using that standard, the district court looked to the arguments that were made below and to the declaration that Flash Answers provided and held that it was not enough to show an undue burden. So they stated that it would take 300 hours. That's what they said in front of the district court, right? Yes, Your Honor. And so I guess how are we to assess whether that's an undue burden or not? Your Honor, this court's position is to determine whether or not the district court abused its discretion in assessing that it was not an undue burden. And the way you do that is look for contextual evidence. As the Sixth Circuit said in Ferrel Gas and as the Third Circuit said in Conaca, it's not enough simply to say that it will take employees away from their normal jobs because complying with any subpoena does that. You have to show that in context. How will it harm the business operations? How will it disrupt the business operations to comply with the subpoena? And the district court applying the correct legal standard and looking at the evidence before held that it did not because there's not contextual evidence. So, for example, they say that it will take 300 hours, but they don't say why the office manager and bookkeeper spending that 300 hours, if that's how much time it would take, would disrupt their operations. There's an allegation simply that it would without any details. If it would be difficult to have those employees do that, why couldn't they hire a vendor? They say in the declaration that it would cost money. How much money would that cost and how did that compare to the overall business operations? Are there other employees that could help out with a compilation? And is there a burden to come up with sort of a contextualized justification for concluding that it's underly burdensome? That's correct, Your Honor. And briefly, there was a mention about requiring the compilation of information. I don't believe that was an issue below, but if this court were to reach it, the Fourth Circuit and Maryland Cup and the Tenth Circuit and City Court, both cases cited in our brief on other points, both talk to how it is well settled that the EEOC may require the compilation of information in response to a subpoena. At the end of the day, we're seeking this basic identifying information. We're looking to identify potential grouped individual witnesses to determine whether or not discrimination occurred. And under the case law, we are allowed to seek that evidence over a period of time that extends beyond the period of employment. You can see that in the Sixth Circuit's decision in Roadway. I believe it's in Conaga and Kronos cited in our brief to get context for what the scope of the discrimination, if it occurred, was. And so that's why the subpoena asks for the information for the scope of time it was. And that simple information is what the district court held was relevant and held that flashed answers hadn't carried their burden to show an undue burden. We don't think the district court abused its discretion in reaching that result, and we'd ask this court to affirm. Thank you very much. Thank you. Mr. Kimmel. Thank you. Just a point of clarification in response to a question that was asked. There were a number of things requested from the appellants in connection with the EEOC's investigation, and a number of things were provided, policy information and so on. The only thing objected to was this laundry list of information concerning all their employees for five years. And in connection with that, there was no outright refusal to provide information about any employees. There was an attempt to come to a compromise as to what's a reasonable time frame and reasonable information and how can we provide it.  Sorry? Right now it's five years? Five years, yes. Again, for an individual that was employed for a year and a half and alleged that the egregious things that happened happened in the last few months of that individual's employment. To say, Your Honors, that we need to have the identity and contact information and race and gender and age of every single one of your employees for five years, just in case somebody in our investigation can't name somebody, is a phishing expedition. I mean, that's what that is. Your Honor, there is a charging party, Your Honors. There's a charging party who can identify people. This is a question, not a statement. I appreciate the predicament of every employer. But on review, when we have an abuse of discretion standard, the district court has been dealing with this much longer than certainly I have and the court feels as, how do we assess, how do we determine that this is an error? In other words, you're trying to compromise anywhere between a year and a half to five years. There's some compromise potentially. But district court, based on the information before it and based on, and maybe you'll get to this, the lack of context provided by Ms. Maselli, is that her name, and others, determine this is not underly burdensome. Well, Your Honor, I think it's an abuse of discretion because the court below misapplied the directives from the U.S. Supreme Court in the Shell Oil case. The Shell Oil case said that while the relevance standard in connection with the investigation of the EEOC is to be interpreted liberally, it's not to be interpreted so liberally that the term relevance is a nullity. Okay? And that's what's happened here. The term relevance has become a nullity. I would point out, by the way, out of every single case cited by both sides, there's only one case where the EEOC demanded this type of what they call pedigree information for all employees of an employer. In every other case cited, it's employees that were affected by this policy, employees that were affected by that policy, whether it's the appearance policy in UPS regarding workers wearing beards or Social Security information in the United Airlines case, those type of things. There's only one other case. It's a Northern District of California case, which is a group of restaurants where there were seven separate charges filed against the restaurants, and they sought all information for all employees, even though all these individuals were just front-of-the-house workers. The employer objected. The court ended up reducing the scope of the subpoena, both in the number of restaurants they could get information from, but also saying that there were no busboys, for instance, were not relevant to the allegations that are all contained in the charge, and therefore they don't need to produce information regarding the busters. There's no other example of this type of broad-based, untethered demand for information completely unrelated to the actual allegations in the charge. I know that the EEOC can be forced or required to return documents, and you heard my question, which is why are we here, to the extent that part of the argument rests on the amount of time and resources that it takes to respond, why are we here? Just practically speaking. I don't want to hear about, you know, just practically speaking. Why are we here on that point? You've expended the resources. Well, Your Honor, it's ongoing. We're still trying to complete the production, but there's also the issue of the right of the investigation. No, no, no, I understand that. I'm just focused on that discrete issue. The answer is that there's an invasion here, there's an overreaching by the government, frankly, in terms of what they believe they can subject an employer to and what they believe their authority is under the law, and I think that has to be addressed. So your remedy is to try to get it all back after having expended the resources already to produce the documents? Yes, Your Honor. Okay. Can I just very quickly address the contextual issue? Yes. There is a lot of context provided by Ms. Maselli as to why it was an undue burden or is an undue burden to produce this information. Ms. Maselli specifically says there's only two administrative employees for this, assuming both these clubs are one employee for the purposes of this argument only, there's one full-time administrative employee and one employee that comes in two days a week, and those employees together are responsible for all of the operations at the club and that responding to that subpoena would require them to stop doing certain things that keep the business operating. That is context. I take it that that's what happened. So they've been working, I mean, if I take you at your word, I do, they've been working nonstop trying to respond to the EEOC's subpoena, but is the business still a going concern? It's still a going concern, Your Honor, but the issue is the burden imposed on that going concern versus the charges leveled versus the scope of the demand, right? Weighing all those things, it's an undue, the term is undue burden, right? Is it unduly burdensome? It is absolutely unduly burdensome. Thank you very much. I appreciate the arguments. We'll reserve decision.